**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000594
25-MAR-2014
08:13 AM**

NO. CAAP-11-0000594

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JASON KAWAKAMI, individually as on behalf of all others
similarly situated, Plaintiff-Appellant/Cross-Appellee,
v.
KAHALA HOTEL INVESTORS, LLC, dba KAHALA HOTEL AND RESORT,
Defendant-Appellee/Cross-Appellant,
and
DOE DEFENDANTS 1-50, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-2496)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Plaintiff-Appellant Jason Kawakami ("Kawakami"),
individually and on behalf of all others similarly situated,
appeals from the Final Judgment and the Order Granting Defendant
Kahala Hotel Investors, LLC dba the Kahala Hotel & Resort's
Renewed Motion for Judgment as a Matter of Law, Filed February 8,
2011, both filed on July 15, 2011 in the Circuit Court of the
First Circuit ("Circuit Court").[1]

Defendant-Appellee Kahala Hotel Investors, LLC dba The
Kahala Hotel & Resort ("KHI") cross-appeals from the Circuit
Court's October 28, 2010 oral denial of KHI's motion for summary
judgment; its Order Granting Plaintiff's Motion for Summary
Judgment Filed on August 19, 2010, filed on January 6, 2011; and

---

[1]    The Honorable Gary W.B. Chang presided.

the Final Judgment.

I.   BACKGROUND

        This appeal stems from allegations that KHI violated Hawaii Revised Statutes ("HRS") § 481B-14, which compels any hotel or restaurant that applies a service charge for the sale of food or beverage services to either (1) "distribute the service charge directly to its employees as tip income," or (2) "clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."  HAW. REV. STAT. § 481B-14 (2008).

        Kawakami, who held his wedding reception at KHI, alleged that KHI applied a service charge to his invoice without disclosing that a portion of the charge was not distributed to employees as tip income, and that this was consistent with KHI's regular business practices.  Kawakami claimed that KHI's failure to issue disclosures despite the incomplete distributions violated HRS § 481B-14.  Accordingly, Kawakami, as class representative, sought damages for himself and

> [a]ll consumers who paid a "service charge" to the Kahala Hotel and Resort in connection with the purchase of food or beverages which the Hotel and Resort did not distribute in its entirety to its employees . . . , which group of consumers is hereafter referred to as "the Class."

KHI did not dispute that the undistributed portion was not directly paid out as tips.  Under a collective bargaining agreement which specified the imposition and disposition of service charges, KHI was entitled to retain fifteen percent of each service charge as its "Management's Share."  However, it was KHI's policy and practice to allocate its Management's Share as a bookkeeping offset against wages owed to the relevant employees, thereby ensuring, at least as an accounting matter, that the entire service charge was ultimately "used to pay . . . the wages and tips of . . . employees."[2/]  HAW. REV. STAT. § 481B-14.  KHI argued that it was therefore in compliance with HRS § 481B-14.

_____

        [2/]   KHI collected the entirety of service charges and allocated eighty-five percent thereof to be paid out as tips to employees twice per month.

The parties filed competing motions for summary judgment, which the Circuit Court deemed to be partial motions for summary judgment concerning the proper construction of HRS § 481B-14. The Circuit Court concluded that the discrepancy between "tip income" and "wages and tips" in HRS § 481B-14 created an ambiguity. After reviewing the statute's legislative history, and ruling that the Management's Share properly belonged to KHI with nothing compelling it to use those proceeds as an offset against wages, the Circuit Court concluded that KHI's subsequent allocation of those proceeds was irrelevant. Thus, the Circuit Court ruled that HRS § 481B-14 required KHI to disclose that "a portion of the service charge would not be paid to its employees as tip income, but instead was to become the property of [KHI]."

The issue of damages remained and was addressed in a subsequent trial. Kawakami's theory of the case was that KHI was liable for the full amount of service charges paid (approximately $1.7 million) as such amounts were paid pursuant to an unlawful agreement. Before trial, Kawakami filed a motion in limine seeking to exclude "evidence of damages other than the sums paid by consumers in mandatory service charges[.]" Kawakami anticipated (correctly) that KHI would submit evidence of "amounts actually distributed to [employees]" as the proper measure of damages. The Circuit Court denied Kawakami's motion. Ultimately, the jury awarded the Class $269,114.73 in damages— precisely the aggregate amount of the Management's Share from each service charge at issue.

During and after trial, KHI moved for judgment as a matter of law ("JMOL"), pursuant to Hawai'i Rules of Civil Procedure Rule 50, a total of four times, each time arguing that Kawakami had not provided any evidence of economic injury. The Circuit Court denied the first three JMOL motions. In considering the fourth and final JMOL motion, it focused on the lack of evidence of any economic loss or harm to Kawakami or the Class: "The jury awarded as damages to Plaintiffs a sum that appears to be equal to the amount of the Management's Share of the service charge. However, the Court is struggling to

understand how the Management's Share . . . constitutes financial or economic loss or harm to Plaintiffs."  On July 14, 2011, noting that the record was devoid of evidence of such loss or harm, the Circuit Court granted KHI's final JMOL motion.  That same day, the court issued its Final Judgment, thereby reversing the jury's verdict and entering judgment in favor of KHI.

Both parties timely appealed.

## II.  POINTS OF ERROR

Kawakami contends that the Circuit Court erred when it:

(1) "granted judgment as a matter of law contrary to the jury's verdict, since there was substantial evidence to support the jury's finding. . . ."

(2) "denied Kawakami's motion *in limine* . . . and . . . allowed the jury to consider evidence to show the portion of the service charge that was actually distributed to banquet employees as tip income."

KHI contends that the Circuit Court erred in its summary judgment rulings "as to the interpretation of [HRS § 481B-14]."

## III. STANDARDS OF REVIEW

Summary Judgment

On appeal, the grant or denial of summary judgment is reviewed de novo.  *See State ex rel. Anzai v. City and Cnty. of Honolulu*, 99 Hawai'i 508, 515, 57 P.3d 433, 440 (2002).

Statutory Interpretation

> "Statutory interpretation is a question of law reviewable de novo."  *State v. Wheeler*, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotation marks omitted).  Our construction of statutes is guided by the following rules:

> > First, the fundamental starting point for statutory-interpretation is the language of the statute itself.  Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an

ambiguity exists.

> Id. (quoting *Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cnty. of Honolulu*, 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007)).

*First Ins. Co. of Haw. v. A&B Properties*, 126 Hawai'i 406, 414, 271 P.3d 1165, 1173 (2012).

## IV. DISCUSSION

Central to both of Kawakami's points of error is his contention that he and the Class were entitled to damages for the full amount of service charges paid, as they were payments made "pursuant to a void or illegal provision of [an] agreement," citing *Flores v. Rawlings* Co., 117 Hawai'i 153, 169, 177 P.3d 341, 357 (2008). He thus argues that the Circuit Court erred in denying his motion in limine to exclude evidence of KHI's allocation of the service charge, and erred in granting judgment as a matter of law in KHI's favor.

KHI, in its cross-appeal, contends that the Circuit Court erroneously interpreted HRS § 481B-14. KHI argues that when properly construed, HRS § 481B-14 permits KHI's practice of allocating a portion of the service charge to pay wages without issuing a disclosure. KHI concludes that the Circuit Court therefore erred in denying its motion for summary judgment. Kawakami counters by arguing, in part, that the statute's plain language mandates a disclosure when any portion of the service charge is not distributed as "tip income" and that KHI's interpretation is inconsistent with HRS § 481B-14's purpose.

We find that resolution of KHI's cross-appeal is dispositive of this appeal. At issue is whether, absent any disclosure to the customer, KHI's retention for itself of a percentage of each service charge collected, and its subsequent allocation of those proceeds as an offset against wages, violates HRS § 481B-14. Thus, we are tasked with interpreting HRS § 481B-14, which provides that:

> Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

5

Generally, in construing a statute, courts resort to the rules of statutory interpretation to ascertain and give effect to the legislature's intent. *See, e.g., Kanahele v. Maui Cnty. Council*, 130 Hawai'i 228, 244, 307 P.3d 1174, 1190 (2013). Here, however, the Hawai'i Supreme Court, in *Villon v. Marriott Hotel Servs., Inc.*, 130 Hawai'i 130, 136, 306 P.3d 175, 181 (2013), recently construed HRS § 481B-14[3] in the context of determining whether a service charge constitutes wages for purposes of wage withholding statutes.[4]

We need go no further than *Villon*'s determination that "the plain language of HRS § 481B-14 expressly equates 100% of a 'service charge' with [both] 'tip income' and 'wages and tips of employees.'" *Id.* In other words, "tip income" and "wages and tips" are synonymous. *Id.* at 135, 306 P.3d at 180 ("[W]hen a hotel or restaurant distributes less than 100% of a service charge directly to its employees without disclosing this fact to the purchaser, the portion withheld constitutes 'tip income,' *synonymously phrased* within HRS § 481B-14 as 'wages and tips of employees.'" (emphasis added)).

Indeed, a contrary conclusion would have risked an absurd result - the impossibility of compliance. *See Ah Mook Sang v. Clark*, 130 Hawai'i 282, 297, 308 P.3d 911, 926 (2013) ("[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." (quoting *State v. Arceo*, 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996))). If KHI did not satisfy the first prong of HRS § 481B-14 by distributing

---

[3] *Villon* was decided after the Circuit Court granted partial summary judgment for Kawakami and after the parties submitted their briefs on appeal.

[4] *Villon*, on certification from the United States District Court for the District of Hawai'i ("U.S. District Court"), considered whether employees could bring claims for violations of HRS § 481B-14 under state wage withholding statutes. 130 Hawai'i at 132, 306 P.3d at 177. In resolving this issue, the supreme court addressed whether withheld service charge proceeds were properly understood to be withheld wages in the context of HRS Chapters 388 and 481B. *Id.* at 135, 306 P.3d at 180. After the supreme court determined that service charge proceeds were indeed wages and that suit could be brought under HRS Chapter 388, *id.* at 135-37, 306 P.3d at 180-82, the U.S. District Court proceeded to hold the defendant-hotel liable to the plaintiffs-employees for amounts withheld but not disclosed, as violations of HRS Chapter 388. *Villon v. Marriott Hotel Servs., Inc.*, Civil No. 08-00529LEK-RLP, 2013 WL 5928997, at *2 (D. Haw. Oct. 31, 2013).

the service charge proceeds as "tip income," it must then have issued a disclosure. But given that KHI applied its share of the service charge towards satisfying its wage obligation - *i.e.*, it "used [that share] to pay for . . . wages . . . of employees," - there was nothing left to disclose.[5]

Because we decline to give HRS § 481B-14 a construction contrary to that of *Villon*, we hold that KHI distributed the entirety of the service charge to its employees as "wages and tips," and therefore as "tip income."[6] Thus, Kawakami's pre-*Villon* plain-language and statutory-purpose arguments notwithstanding, KHI was in compliance with the first prong of HRS § 481B-14, and no disclosure was required.

We are not unmindful that a consequence of KHI's practice - that customers remain unaware that their gratuities do not flow wholly to the employees as income *supplemental* to wages - illuminates a possible loophole or defect in HRS § 481B-14. If, as appears to be the case, HRS § 481B-14's disclosure

---

[5]     We recognize that the Hawaiʻi Supreme Court also recently decided *Gurrobat v. HTH Corp.*, No. SCAP-12-0000764, 2014 WL 714693 (Haw. Feb. 25, 2014). In *Gurrobat*, a portion of the service charge was used "to supplement the income of managerial employees," rather than paid to "non-management service employees," and was therefore in violation of HRS § 481B-14. *Id.* at *16. Here, apart from the argument that the Management Share was in total an improper withholding absent disclosure, neither party raises the question of whether any portion of the service charge was paid to employees who fell outside the meaning of that term as used in HRS § 481B-14.

     Separately, neither party raises the question of whether the manner in which KHI retained its Management's Share and applied it as an offset against its wage obligation satisfies the requirement that service charge proceeds "be[] used to pay for . . . wages" within the meaning of the statute, which, as discussed *infra*, appears concerned with whether employees have fair opportunity to receive full gratuities. HAW. REV. STAT. § 481B-14.

     Therefore, we do not consider these issues.

[6]     Whether KHI distributed the entirety of the service charge "directly" to its employees is a separate question, one understandably not raised by either party since both parties assumed (pre-*Villon*) that KHI had not satisfied HRS § 481B-14's first prong. *Villon* observed, however, that the House Finance Committee added the word "directly" to an earlier legislative draft as a "technical, nonsubstantive amendment[] for purposes of clarity and style." *Villon*, 130 Hawaiʻi at 138-39, 306 P.3d at 183-84 (quoting and citing H.B. 2123, H.D. 2, 20th Leg., Reg. Sess. (2000)). In light of the "nonsubstantive" nature of the amendment, we cannot meaningfully distinguish the directness of KHI's collection and periodic payment to employees of the non-Management Share component of the service charge proceeds (*i.e.*, that part which is the employees' gratuity) from its collection and periodic application of the Management's Share towards its wage expenses. Accordingly, we regard KHI's wage offset practice to be a "direct" disbursement to its employees.

requirement is designed to remedy the detrimental impact on the employee of an employer's retention of service charge proceeds, it may fail in certain circumstances to achieve that end.

Where a disclosure indicates that some service charge proceeds are used to offset administrative expenses rather than going to the employee, presumably an informed customer may choose to add an additional gratuity. *See Villon*, 130 Hawai'i at 139-40, 306 P.3d at 184-85 ("The [legislature's] dual focus can . . . be viewed as a cause-and-effect relationship: the cause (nondisclosure to customers) has an effect (employees receiving a smaller gratuity than the customer intended). The legislature sought to prevent or mitigate the effect by removing the cause."). But where the proceeds are used to offset an employer's wage obligation, thereby negating the disclosure requirement, the employee receives neither supplemental gratuity nor extra wages as a result, since wages are generally understood as fixed based on the time worked and wage rate paid. *Merriam-Webster's Collegiate Dictionary* 1405 (11th ed. 2003) ("wage . . . a payment usu[ally] of money for labor or services usu[ally] according to contract and on an hourly, daily, or piecework basis").[7]

To the extent this may not be an intended consequence, we see no way around it beyond effectively reading the phrase "wages and" out of the statute. This we will not do.[8]

---

[7]   In fact, under *Villon*'s (and our) construction of HRS § 481B-14, a hotel could conceivably retain the entirety of a service charge as its own, and then designate the proceeds as to "be[] used to pay for . . . [employees'] wages." Haw. Rev. Stat. § 481B-14. Under the premise that a customer generally will not supplement a service charge understood to be a full gratuity with an additional gratuity, an employee would then receive compensation in the form of wages only.

[8]   Kawakami argues in the alternative that this is precisely what we should do. He argues that a canon of statutory interpretation permits an appellate court to strike words from a statute "'as surplusage' if inadvertently inserted or if repugnant to the rest of the statute. *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001)[.]" For the reasons put forth *infra*, we do not think this to be such a case.

Separately, Kawakami advances the argument that the terms "tip income" and "wages and tips" can best be harmonized if "wages" is understood as a reference made in the context of Hawai'i's tip credit statutes, whereby an employer, in limited circumstances, may apply some portion of an employee's tips towards that employee's wages for purposes of determining the employer's minimum wage payment obligation. *See generally* HAW. REV. STAT. § 387-2 (Supp.

> It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute.

*Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i 423, 449, 228 P.3d 303, 329 (2010). Moreover, the legislative history, all the way back to the statute's origins, is replete with consistent references to "wages and tips" as payment types that lay outside of the legislature's concern. *See Villon*, 130 Hawai'i at 137-40, 306 P.3d at 182-85. Even the statute's express purpose likewise references payments to both "wages and tips":

> The purpose of this Act is to require hotels and restaurants that apply a service charge for food or beverage services, not distributed to employees as tip income, to advise customers that the service charge is being used to pay for costs or expenses other than *wages and tips* of employees.

2000 Haw. Sess. Laws Act 16, § 1 at 22 (emphasis added). That it may appear odd to us to permit KHI's practice absent disclosure is unimportant, as it is abundantly clear that the legislature only wanted customers apprised where service charge withholdings went toward costs and expenses besides "wages and tips."

Even if the construction we apply today does, in some circumstance, cause unintended consequences, we are obliged to leave it to the legislature to resolve the matter. *See Honbo v. Haw. Ins. & Guar. Co.*, 86 Hawai'i 373, 376, 949 P.2d 213, 216 (App. 1997) ("If there is any inequality or any situation that was overlooked in the law, it is up to the legislature to make the correction. For this court to do so under the guise of statutory construction is to indulge in judicial legislation which we are prohibited from doing under the doctrine of separation of powers[.]"). Against the backdrop of the legislature's consistent inclusion of the key term "wages" in legislative drafts, comments, reports, and especially the statute's express purpose, we will not deem "wages" to be

---

2013); *Heatherly v. Hilton Hawaiian Village Joint Venture*, 78 Hawai'i 351, 356, 893 P.2d 779, 784 (1995). However, neither *Villon* nor HRS § 481B-14's many legislative history references, *see Villon*, 130 Hawai'i at 137-40, 306 P.3d at 182-85, offers any indication that our understanding of wages should be so limited.

excisable surplusage. *Ah Mook Sang*, 130 Hawai'i at 297, 308 P.3d at 926 ("[W]e must . . . construe [statutory language] in a manner consistent with its purpose.").

For the foregoing reasons, we conclude that the Circuit Court erred in granting summary judgment for Kawakami and in failing to grant summary judgment for KHI.

V.   CONCLUSION

Therefore, we vacate the Circuit Court's Order Granting Plaintiff's Motion for Summary Judgment Filed on August 19, 2010, filed on January 6, 2011, and direct entry of summary judgment on Defendant Kahala Hotel Investors, LLC dba Kahala Hotel and Resort's Motion for Summary Judgment, filed September 13, 2010, in favor of KHI. Because the Final Judgment, filed July 15, 2011, is consistent with our resolution of KHI's cross-appeal, the judgment is affirmed.

DATED:   Honolulu, Hawai'i, March 25, 2014.

On the briefs:

John F. Perkin and
Brandee J.K. Faria
(Perkin & Faria)
for Plaintiff-Appellant/
Cross-Appellee

David J. Minkin,
Lisa W. Cataldo, and
Dayna H. Kamimura-Ching
(McCorriston Miller Mukai
MacKinnon LLP)
for Defendant-Appellee/
Cross-Appellant

Presiding Judge

Associate Judge

Associate Judge

10